## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| SAVE THE BULL TROUT AND ALLIANCE FOR THE WILD ROCKIES, | Cause No. CV-25-45-H-BMM |
| Plaintiff, | **ORDER REGARDING PRELIMINARY INJUNCTION** |
| vs. | |
| U.S. DEPARTMENT OF THE INTERIOR AND WEST SIDE DITCH COMPANY, | |
| Defendant. | |

### INTRODUCTION

Plaintiffs Save the Bull Trout and Alliance of the Wild Rockies (collectively "Plaintiffs") have filed a motion for a preliminary injunction. (Doc. 9.) Plaintiffs seek an order enjoining Defendants U.S. Department of the Interior ("DOI") and West Side Ditch Company ("West Side") (collectively "Defendants") from diverting water from the Upper Clark Fork River (UCF) at the West Side Ditch (WSD) when the streamflow at the U.S. Geological Survey gauge in Deer Lodge, Montana falls below 90 cfs to ensure the functional integrity of bull trout critical habitat. (Doc. 9 at 6.) Defendants oppose the motion. (Docs. 17 and 21.) The Court held a hearing on September 25, 2025.

### BACKGROUND

Plaintiff Save the Bull Trout is a non-profit public interest organization dedicated to saving the bull trout species. (Doc. 1 ¶ 11.) Plaintiffs Alliance for the Wild Rockies is a tax-exempt public interest organization dedicated to preservation of biodiversity in the Northern Rockies. (*Id*. ¶ 12.) Plaintiffs have brought this action against Defendants on claim of violation of Endangered Species Act (ESA), 16 U.S.C. §§1532 et seq. and violations of the Administrative Procedures Act, 5 U.S.C. §§ 701 et seq., (Doc. 9 at 2.)

Plaintiffs allege that Defendants unlawfully take threatened bull trout "via entrainment and inducement of suboptimal instream flow on the section of the UCF River downstream of the WSD." (*Id*.) Plaintiffs allege that the U.S. Fish & Wildlife (FWS) has designated 62.8 miles of the Upper Clark Fork River (UCF) as critical habitat for the bull trout. (Doc. 1 ¶ 18.) Plaintiffs allege that DOI operates the Grant-Kohrs Ranch National Historic Site in Deer Lodge, Montana that abuts the UCF. (*Id*. ¶ 15.) DOI diverts water from West Side Ditch for agricultural purposes. (*Id*. ¶ 19.) West Side diverts water of the UCF near Deer Lodge, Montana for irrigation purposes. (*Id*. ¶ 21.) The ESA lists bull trout as threatened. (*Id*. ¶ 18.)

Plaintiffs contend that a healthy fishery in the UCF requires a streamflow of 90 cfs. Plaintiffs claim that any lesser flows could cause rapid degradation of the aquatic habitat. (Doc. 10 at 6.) Plaintiffs allege that the streamflow on the UCF has dropped below 90 cfs numerous times in recent weeks causing degradation of the

bull trout habitat. (Doc. 1 ¶ 31.) Plaintiffs contend Defendants' diversion of water results in the unpermitted take and entrainment of bull trout in violation of the ESA. Plaintiffs also contend that DOI's biological opinion (BiOp) of the UCF did not adequately assess the impacts of the West Side Ditch users dewatering. Plaintiffs assert that irreparable harm will result in the absence of a preliminary injunction.

## STANDARD OF REVIEW

District courts enjoy discretion regarding the grant or denial of a preliminary injunction. *Envtl. Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020); *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must establish the following four factors: (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Winters*, 555 U.S. at 20. The balance of equities and public interest "factors merge when the Government" is the party opposing the preliminary injunction request. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## DISCUSSION

Plaintiffs allege that Defendants diversion of water from the UCF constitutes an unpermitted take of the threatened bull trout. (Doc. 10.) Plaintiffs argue that the take of bull trout causes irreparable harm to the bull trout and Plaintiffs' member interests. (*Id*. at 5.) Defendants argue that Plaintiffs failed to establish immediacy or

irreparable harm to warrant a preliminary injunction. (Docs. 21 at 7, 14-16; 17 at 2, 9.) Defendants contend consideration of a preliminary injunction proves unnecessary because the 2025 irrigation season is nearly complete, and Defendants no longer will divert water. (*Id.*) Defendants further argue that Plaintiffs are unlikely to succeed on the merits of their claims. (*Id.*)

## I.    Whether Plaintiffs have satisfied the requirements for a preliminary injunction under Fed. R. Civ. P. 65 and *Winter*

A plaintiff seeking a preliminary injunction must establish the following: (1) a likelihood to succeed on the merits, (2) a likelihood of suffering irreparable harm absent preliminary relief, (3) a balance of equities favoring the movant, and (4) that an injunction supports public interest. *Winter*, 555 U.S. at 20.

### a.  Likely to suffer irreparable harm absent the requested relief

Plaintiffs are unlikely to suffer irreparable harm in the absence of a preliminary injunction. The minimum flow to support the bull trout is 90 cfs. (Doc. 10 at 12-13.) Plaintiffs allege that Defendants dewatering is causing flows to fall well below this threshold, resulting in entrainment and fish blockage of the bull trout. The Court previously determined that Defendants' continued diversion of water during the irrigation season when the Deer Lodge gauge falls below 90 cfs was likely to cause harm to the bull trout. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 820–21 (9th Cir. 2018). The BiOp explained that flows between July and September are "significantly reduced." (Doc. 10 at 12.) The BiOp further noted

that "[m]id summer dewatering from irrigation withdrawal can have severe impacts on summer stream flows in the river upstream of Deer Lodge." *Id.*

The 2025 irrigation season is set to end October 15, 2025. As the BiOp indicated, flows in the UCF are significantly reduced from July through September, when irrigation is occurring. The BiOp does not indicate that beyond September the Defendants' diversion of water for irrigation purposes has a negative impact on the streamflows. DOI indicated it stopped diverting water from the West Side Ditch on July 15, 2025, and will not divert water when the Deer Lodge gauge falls below 90 cfs. West Side's diversion of water will halt soon, as the irrigation season comes to an end.

The necessity for Defendants to be enjoined from diverting water from the UCF at the WSD when the streamflow at the U.S. Geological Survey gauge in Deer Lodge, Montana falls below 90 cf has severely diminished now that it is October. It is now outside the timeframe designated in the BiOp when severe dewatering by Defendants takes place to harm the bull trout. The Court finds that due to the 2025 irrigation season winding up, there no longer remains a likelihood of imminent and irreparable harm to the bull trout in the absence of a preliminary injunction.

### b. Likely to succeed on the merits

To prevail on a take of an endangered species claim under ESA § 9, a plaintiff must show that the defendant unlawfully "took" an endangered species. "The term

'take' means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." *Id*. §1532(19). Harm "means an act which actually kills or injures wildlife[,]" and "may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R.§17.3. A take that is incidental, but not the purpose of, may be lawful if permitted upon receipt of an incidental take statement (ITS). 16 U.S.C. §§1536(b)(4), 1539(a)(1)(B).

Plaintiffs are likely to succeed on the merits of their ESA claims against Defendants. DOI has an ITS. West Side does not have a permit or ITS. The bull trout is a listed endangered species. A party may be liable under the ESA § 9 if it fails to implement mandatory condition of the ITS and exceeds the take authority. *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife Serv.*, 273 F.3d 1229, 1239 (9th Cir. 2001). Takes that exceed the ITS require the reinitiation consultation and support liability for ESA § 9 violations. *Cal. Trout, Inc. v. U.S. Bureau of Reclamation*, 115 F.Supp.3d 1102, 1115 (C.D. Cal. 2015) (citing *Ariz. Cattle Growers' Ass'n*, 273 F.3d at 1239).

Plaintiffs allege that DOI failed to implement the ITS's required conditions, exceeded the ITS authorized take, and failed to reinitiate consultation with FWS. (Doc. 20 at 23.) DOI allegedly did not assess all diversion structures for

6

entrainment, install fish screens on diversions, and conduct an end-of-year salvage of fish as required by the mandatory conditions of the ITS contained in Reasonable Prudent Measure #1. (Doc. 10 at 24.) DOI attempted to obtain fish screens, as required by the ITS. West Side refused the installation. DOI did not attempt to discuss the installation of fish screens further with West Side. Defendants failed to make reasonable efforts to satisfy the mandatory requirements of the ITS. These actions likely violate the ESA § 9.

Infrastructure that limits access, injures, or kills listed species can be determined as a take under the ESA. *Wishtoyo Found v. United Water Conservation Dist.*, 2018 WL 6265099, at *58–61 (C.D. Cal. Sept. 23, 2018), *aff'd* 795 Fed. Appx 541 (9th Cir. 2020). "It is well-settled that an activity that modifies a species' habitat in a manner that 'significantly impairs the breeding and sheltering of a protected species amounts to harm under the ESA.'" *San Luis Obispo Coastkeeper*, 758 F.Supp.3d at 1165 (quoting *Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1067 (9th Cir. 1996)). "The future threat of [even a] single taking is sufficient to invoke the authority of the [ESA]." *Loggerhead Turtle v. Council of Volusia Cnty., Fla.,* 896 F.Supp. 1170, 1180 (M.D. Fla. 1995).

Plaintiffs allege that West Side's diversion of water harms the bull trout and modifies the bull trout habitat on the UCF. West Side continues to divert water when the streamflows drop below 90 cfs, the necessary flow to support bull trout

habitat. The low streamflow caused by the diversion of water by Defendants results in the UCF's inability to sustain food and habitat to maintain the bull trout population. (Doc. 10 at 27-28.) The diversion by West Side likely harms the bull trout when the flows fall below 90 cfs. Plaintiffs argue that West Side also refused the installation of fish screens to avoid entrainment of the bull trout. Plaintiffs are likely to succeed on the merits of its ESA § 9 claims against Defendants.

### c. Balance of the equities and the public interest

The balance of the equities and the public interest tips in Plaintiffs' favor because the alleged ESA violations likely cause harm to a protected species, bull trout. The "balance of hardships and the public interest tips heavily in favor of protected species." *See, e.g., Nat'l Wildlife Fed'n v. Burlington N. R.R.*, 23 F.3d 1508, 1511 (9th Cir. 1994). West Side similarly asserts it would suffer harm if a preliminary injunction were granted because of the need for irrigation. West Side alleges agricultural and livestock operation losses during the irrigation season. (Doc. 21 at 23.) DOI does not contend it would suffer any harm from a preliminary injunction, as it has no need to divert water for the remainder of the 2025 irrigation season. (Doc. 17 at 11-12.) The balance of equities tips in favor of Plaintiffs.

### CONCLUSION

Plaintiffs have not established the requirements under Fed. R. Civ. P. 65 and *Winter.* Plaintiffs are unlikely to suffer imminent, irreparable harm in the absence of

a preliminary injunction. A preliminary injunction enjoining Defendants from diverting water from the UCF at the West Side Ditch when the streamflow at the U.S. Geological Survey gauge in Deer Lodge, Montana falls below 90 cfs proves unnecessary at this time. Defendants will no longer be diverting water due to the irrigation season coming to an end. The Court deems it proper to resolve this dispute in a timely fashion that allows the parties to assert all of their arguments and supporting authority in an orderly fashion. The Court expects to resolve this matter before the start of the 2026 irrigation season.

## ORDER

Accordingly, **IT IS ORDERED** Plaintiffs' Motion for a Preliminary Injunction (Doc. 9) is **DENIED**.

DATED this 3rd day of October 2025.

Brian Morris, Chief District Judge
United States District Court