**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION**

SAVE THE BULL TROUT AND ALLIANCE FOR THE WILD ROCKIES,

Plaintiff,

vs.

U.S. DEPARTMENT OF THE INTERIOR AND WEST SIDE DITCH COMPANY,

Defendant.

Cause No. CV-25-45-H-BMM

**ORDER ON MOTION TO DISMISS**

## INTRODUCTION

Defendants West Side Ditch Company ("West Side") filed a motion to dismiss Count 2 of the Complaint filed by Plaintiffs Save the Bull Trout and Alliance for the Wild Rockies (collectively "Plaintiffs"). (Doc. 5.) West Side contends that the doctrine of res judicata precludes Plaintiffs from asserting claims against West Side. (Doc. 6.) Plaintiffs oppose the motion. (Doc. 16.) The Court held a hearing on September 25, 2025.

## BACKGROUND

Plaintiffs allege that West Side has violated the Endangered Species Act (ESA), 16 U.S.C. §§1532 et seq. (Doc. 1 ¶ 5.) Plaintiffs allege that the U.S. Fish & Wildlife (FWS) has designated 62.8 miles of the Upper Clark Fork River (UCF) as

critical habitat for the bull trout. (*Id*. ¶ 18.) The ESA lists bull trout as threatened. (*Id*.) Plaintiffs contend that a healthy fishery in the UCF requires a streamflow of 90 cubic feet per second (cfs). Plaintiffs claim that any lesser flows could cause rapid degradation of the aquatic habitat.

Plaintiffs allege that the streamflow on the UCF has dropped below 90 cfs numerous times causing degradation of the bull trout habitat. (Doc. 1 ¶ 31.) Plaintiffs claim that West Side diverts water of the UCF near Deer Lodge, Montana for irrigation purposes. (*Id*. ¶ 21.) Plaintiffs argue that West Side's diversion of water from the UCF constitutes an unlawful "take" of the threatened bull trout pursuant to ESA § 9. (*Id*. ¶ 69.) Plaintiffs contend that West Side's actions have modified critical habitat of the bull trout by the diversion of water of the UCF. (*Id*.) Plaintiffs also allege that West Side's failure to install fish screens on the West Side Ditch diversion point constitutes an unlawful "take" of the threatened bull trout due to the entrainment of the bull trout. (*Id*. ¶ 68.) Plaintiffs argue that Defendant Department of Interior's (DOI) biological opinion (BiOp) of the UCF did not adequately assess the impacts of the dewatering by West Side Ditch users.

Plaintiffs previously sued West Side three years ago in May of 2022. *Save the Bull Trout et al. v. U.S. Department of the Interior et al.*, Case 6:22-cv-00042-BMM. Plaintiffs' earlier lawsuit alleged that West Side was unlawfully "taking" the threatened bull trout. (Doc. 6 at 6.) Plaintiffs' previous claims against West Side

included violations of ESA § 9 and § 10, which outlined the requirements of obtaining an incidental take permit. (*Id*.) FWS completed a BiOp following Plaintiffs' filing their previous lawsuit. (*Id*.) FWS issued an incidental take statement (ITS) to DOI. (*Id*.) The ITS required DOI to comply with numerous reasonable and prudent measures and terms and conditions. (*Id*.)

Plaintiffs abandoned their ESA § 9 claims against West Side after FWS issued the ITS. (*Id* at 7.) Plaintiffs did not adjudicate its ESA § 9 claims against West Side in the initial lawsuit. West Side sought to dismiss the remaining ESA § 10 claim. (*Id*.) The Court granted West Side's motion to dismiss the § 10 claim on the basis that Plaintiffs had no independent cause of action against West Side for its failure to obtain an incidental take permit. (Doc. 16 at 11.) The Court entered a final judgment dismissing Plaintiffs' claims against West Side with prejudice. (Doc. 42.)

## LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires claimants to include in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint under the plausibility pleading standard of Rule 8(a)(2). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital*

*Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

A complaint must contain sufficient factual matter to state a plausible claim for relief on its face to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim proves plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard does not require probability, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must "take[] as true and construe [] in the light most favorable to plaintiffs" all factual allegations set forth in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted).

**DISCUSSION**

Plaintiffs allege that DOI's and West Sides's (collectively "Defendants") diversion of water from the UCF and failure to install fish screens on the West Side Ditch diversion point constitute unpermitted takes of the threatened bull trout in violation of ESA § 9. (Doc. 1.) Plaintiffs argue that new operative facts have emerged since the previous lawsuit. (Doc. 16 at 12.) West Side counters that Count

2 in Plaintiffs' Complaint duplicates the claims previously brought against West Side. (Doc. 6.) West Side argues that the doctrine of res judicata/claim preclusion bar Plaintiffs' claims. (*Id*.)

## I. Res Judicata

Res judicata, also known as claim preclusion, "bars a party in successive litigation from pursuing claims that were raised or could have been raised in a prior action." *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1020 (9th Cir. 2019) (citations omitted). The doctrine applies where there exists "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1039 (9th Cir. 2017). "The party asserting a claim preclusion argument 'must carry the burden of establishing all necessary elements.'" *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 855 (9th Cir. 2016) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008)); *see also Media Rights Techs.*, 922 F.3d at 1021.

Both parties agree elements two and three of the doctrine of res judicata have been satisfied. The Court dismissed the claim against West Side with prejudice in the initial lawsuit for a final judgment on the merits. The parties in the initial lawsuit and in this lawsuit are identical. The parties disagree, however, on whether the claims are identical from the initial lawsuit and this lawsuit. The Court will address the identity of claims issue below.

Courts consider four factors to evaluate whether claims are identical including the following:

(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action;

(2) whether substantially the same evidence is presented in the two actions;

(3) whether the two suits involve infringement of the same right; and

(4) whether the two suits arise out of the same transactional nucleus of facts.

*Howard*, 871 F.3d at 1039. "Though all four factors are considered, '[r]eliance on the transactional nucleus element is especially appropriate because the element is outcome determinative.'" *Garity*, 828 F.3d at 855 (quoting *ProShipLine Inc. v. Aspen Infrastructures LTD*, 609 F.3d 960, 968 (9th Cir. 2010)). Both parties focus on the fourth factor and the inquiry into whether the claims "arise out of the same transactional nucleus of facts." *Howard*, 871 F.3d at 1039. West Side presented no argument on the first three factors. The Court will address the fourth factor.

**Same transactional nucleus of facts**

"[T]he inquiry about the 'same transactional nucleus of facts' *is the same inquiry as* whether the claim could have been brought in the previous action." *Howard*, 971 F.3d at 1039 (emphasis in original). Res judicata will not apply if the "claims [] accrue after the filing of the operative complaint." *Id*. "Claim preclusion does not apply to claims that were not in existence and could not have been sued upon—*i.e.*, were not legally cognizable—when the allegedly preclusive action was

initiated." *Media Rights Techs*., 922 F.3d at 1021 (collecting cases). Further, "[a] claim arising after the date of an earlier judgment is not barred, even if it arises out of a continuing course of conduct that provided the basis for the earlier claim." *Id*. (quoting *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000)). A court "must narrowly construe the scope of that earlier action" when considering the same "nucleus of facts" for preclusion purposes. *Central Delta Water Agency v. United States*, 306 F.3d 938, 953 (9th Cir. 2002).

Plaintiffs' previous claims against West Side do not arise under the same transactional nucleus of facts. West Side and DOI both did not possess an ITS and take permit at the time of filing the initial lawsuit. The BiOp and its findings did not exist at the time Plaintiffs filed its previous action against West Side for the unlawful take of bull trout under ESA § 9. DOI now possesses an ITS.

Plaintiffs allege that DOI has violated the mandatory terms and conditions of the ITS. These alleged failures and actions implicate West Side. The continuing alleged non-compliant conduct by DOI, which includes continuing conduct by West Side, provides Plaintiffs with a new cause of action. Res judicata cannot preclude Plaintiffs claims against West Side in this lawsuit due to the new facts that were not known to Plaintiffs at the filing of the initial lawsuit.

The BiOp specifically analyzed the West Side Ditch's potential impact to the bull trout including dewatering, whether West Side's diversion serves as a fish

barrier, fish entrainment in the ditch, temperature, sediment, and nutrient loading. (Docs. 6 at 12 and 7-1 at 8-9, 11-13, 48, 52-58, 61, 70.) The BiOp further determined that "[i]rrigation by private landowners reduces the water available for bull trout, decreases pool depth, and water diversions cause physical barrier impediments to migration. Entrainment of bull trout can occur in ditches without fish screens." (Doc. 1 ¶ 39.) The BiOp concluded that a potential impact to the bull trout exists from the West Side Ditch users. (Docs. 6 at 12; 7-1 at 53.)

The BiOp indicated a threshold streamflow level of 90 cfs proves necessary to support a healthy aquatic habitat of the bull trout. (Doc. 16 at 10.) The BiOp concluded that water diversions that occur when the U.S. Geological Survey Gauge near Deer Lodge ("Deer Lodge Gauge") reads below 90 cfs could cause harm to the bull trout. (*Id.*; Doc. 7-1 at 70.) Water diversions by West Side that occur when the Deer Lodge Gauge drops below 90cfs are alleged to "adversely modify designated bull trout critical habitat by dewatering the UCF." (Doc. 1 ¶ 69.) Plaintiffs allege that the Deer Lodge Gauge measured flows on August 13, 2025, that fell below the threshold identified in the BiOp of between 63.3 cfs and 70.1 cfs. (Doc. 16 at 18.) Data collected by the State of Montana Natural Resource Damage Program indicated that West Side diverted about 34 cfs from the UCF. (*Id.*)

The alleged actionable conduct by West Side occurred after the Court had entered its final judgment in favor of West Side. West Side's and DOI's alleged non-

compliance with the ITS allowed Plaintiffs to initiate this current action. Plaintiffs allowed DOI time to come into compliance with the findings of the BiOp and the terms of the ITS. Plaintiffs, for this reason, dismissed the ESA § 9 claim in the initial lawsuit against West Side after the BiOp and ITS had been issued. Plaintiffs relied upon the BiOp's findings regarding the potential threat to bull trout and DOI's responsibilities to work with West Side to improve the critical bull trout habitat. Plaintiffs allegedly have not seen such improvement since the dismissal of its initial case. West Side's alleged non-compliance with the ITS and alleged continued threat to the bull trout provide Plaintiffs with a new cause of action. *Frank*, 216 F.3d at 851. Res judicata does not preclude Plaintiffs' claims against West Side where new actionable conduct and operative facts arose, "even though the alleged harm is the same." *Central Delta Water Agency*, 306 F.3d at 953 (citing *Fund for the Animals v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992)).

The diversion of water below the necessary threshold identified in the BiOp implicates the conduct of West Side. West Side concedes that differing factual allegations exist between the initial lawsuit and Plaintiffs' Complaint here. (Doc. 27 at 8.) West Side acknowledges that Plaintiffs alleged new allegations "regarding the annual Deer Lodge Gauge measurements from 2022-2024" when West Side diverted water when the streamflow fell below the requisite 90 cfs. (*Id*; Doc. 1 ¶¶ 26-29.) The factual allegations and data indicating that water diversions by West Side that occur

when the Deer Lodge Gauge streamflow drops below 90 cfs creates a new cause of action for Plaintiffs against West Side, given the findings of the BiOp.

DOI's alleged continued noncompliance to secure fish screens on the WSD further implicates West Side. DOI allegedly attempted to comply with the ITS's reasonable prudent measures mandate by seeking approval from West Side to install fish screens. West Side refused the installation. DOI and West Side allegedly did not communicate further in working together to install fish screens at the West Side Ditch diversion point. The Court finds that it cannot dismiss West Side from this action when the new allegations in Plaintiffs' Complaint directly involve West Side and require West Side's consent and cooperation.

West Side's actions following the Court's judgment in Plaintiffs' previous lawsuit give rise to an independent cause of action for Plaintiffs. The BiOp and the ITS identified actionable conduct in which Defendants have engaged. The conduct identified in Plaintiffs' complaint was not occurring at the time Plaintiffs filed their first lawsuit against West Side. West Side's alleged involvement and misconduct in the water diversion of the UCF and fish screen efforts provides Plaintiffs with a valid claim against West Side. The Court determines that the earlier action by Plaintiffs does not arise from the same "nucleus of facts." *Central Delta Water Agency*, 306 F.3d at 953.

**II. The ITS immunization of West Side from ESA liability**

West Side argues, in the alternative, that Plaintiffs claims asserted against West Side fail because the ITS issued to DOI immunizes West Side from potential ESA liability. (Doc. 6 at 24.) An ITS serves to "function as a safe harbor provision immunizing" parties from ESA liability for authorized takes. *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife Serv.*, 273 F.3d 1229 (9th Cir. 2001). An ITS may exempt parties from ESA § 9 liability for "takes" that occur within the scope outlined in the ITS. *Ramsey v. Kantor*, 96 F.3d 434, 441 (9th Cir. 1996). Immunization under the ITS requires, however, that the party seeking immunity demonstrates that its actions comply with the terms and conditions set out in the ITS. *Id*. The Ninth Circuit in *Ramsey* determined that an ITS also can protect parties that are not the permit applicant or the action agency. 96 F. 3d at 442. An ITS "indicates that any taking - whether by a federal agency, private applicant, *or other party* - that complies with the conditions set forth in the incidental take statement is permitted." *Id*. (emphasis added).

West Side contends that to be provided immunization under an ITS, as an "other party," it must establish the following elements: (1) the parties actions were contemplated by the ITS, and (2) that the parties actions comply with the ITS requirements. (Doc. 6 at 26.) The Court agrees.

West Side was not the applicant or action agency who was granted the ITS. FWS granted the ITS to DOI. (Doc. 1 ¶ 58.) West Side still may be granted the

immunity as an “other party” to the ITS. *Ramsey*, 96 F. 3d at 442. The parties do not dispute that the ITS contemplated West Side’s actions. The BiOp and the ITS clearly detail West Side’s operations in its findings. The BiOp analyzes West Side’s impacts to the bull trout at length such as the West Side Ditch’s role in dewatering, fish entrainment, fish barriers, and temperature and nutrient loading. (Doc. 7-1 at 8-9,11-13, 39, 48, 52-53, 54-58, and 61-62.). The ITS requires DOI to assess the irrigation structures and diversions at the West Side Ditch. The ITS requires DOI to make efforts to install a fish screen at the West Side Ditch diversion point. The Court finds that the ITS contemplates West Side’s actions.

Plaintiffs sufficiently have plead factual allegations throughout its Complaint that Defendants have failed to comply with the requirements and reasonable prudent measures required by the ITS. Plaintiffs assert that these violations constitute an unauthorized “take” of the bull trout that exceeds the permissible take threshold contemplated by the ITS. (Doc. 16 at 22.) A court’s inquiry at the pleading stage focuses on whether Plaintiffs sufficiently have plead “factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Ashcroft*, 556 U.S. at 678. The Court finds that the Plaintiffs have sufficiently alleged non-compliance with the ITS requirements by Defendants. The Court denies West Side’s motion to dismiss on the basis that the ITS provides immunity for the Defendants compliance.

## CONCLUSION

New operative facts have emerged since Plaintiffs' previous lawsuit. West Side has failed to meet its burden to show that the doctrine of res judicata precludes Plaintiffs' claims. West Side also is not shielded from ESA liability under DOI's ITS because Plaintiffs sufficiently have alleged that Defendants have violated the terms and conditions of the ITS. The Court will deny West Side's motion to dismiss Count 2 of Plaintiffs' Complaint.

## ORDER

Accordingly, **IT IS ORDERED** Defendant West Side Ditch Company's Motion to Dismiss Count 2 of Plaintiffs' Complaint (Doc. 5.) is **DENIED**.

DATED this 14th day of October 2025.

Brian Morris, Chief District Judge
United States District Court