**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**HELENA DIVISION**

SAVE THE BULL TROUT AND ALLIANCE FOR THE WILD ROCKIES,

Plaintiff,

vs.

U.S. DEPARTMENT OF THE INTERIOR AND WEST SIDE DITCH COMPANY,

Defendant.

Cause No. CV-25-45-H-BMM

**ORDER ON MOTION TO COMMENCE DISCOVERY**

## INTRODUCTION

Plaintiffs Save the Bull Trout and Alliance for the Wild Rockies (collectively "Plaintiffs") filed a motion to commence discovery on Defendants U.S. Department of the Interior ("DOI") and West Side Ditch Company ("West Side") (collectively "Defendants"). (Doc. 44.) Defendants oppose the motion. (Docs. 56 and 58.) The Court held a hearing on February 6, 2026. (Doc. 63.)

## BACKGROUND

Plaintiffs allege that Defendants have violated the Endangered Species Act ("ESA"), 16 U.S.C. §§1532 et seq. (Doc. 1 ¶ 5.) Plaintiffs allege that the U.S. Fish & Wildlife (FWS) has designated 62.8 miles of the Upper Clark Fork River ("UCF") as critical habitat for the bull trout. (*Id.* ¶ 18.) The ESA lists bull trout as threatened.

(*Id*.) Plaintiffs contend that a healthy fishery in the UCF requires a streamflow of 90 cubic feet per second (cfs). Plaintiffs claim that any lesser flows could cause rapid degradation of the aquatic habitat.

Plaintiffs allege that the drop in streamflow on the UCF below 90 cfs numerous times has caused degradation of the bull trout habitat. (Doc. 1 ¶ 31.) Plaintiffs claim that DOI and West Side divert water of the UCF near Deer Lodge, Montana for irrigation purposes. (*Id*. ¶ 21.) Plaintiffs argue that DOI's and West Side's diversion of water from the UCF constitutes an unlawful "take" of the threatened bull trout pursuant to ESA § 9. (*Id*. ¶ 69.) Plaintiffs contend that Defendants' actions have modified critical habitat of the bull trout by the diversion of water from the UCF. (*Id*.) Plaintiffs also allege that Defendants' failure to install fish screens on the West Side Ditch diversion point constitutes an unlawful "take" of the threatened bull trout due to the entrainment of the bull trout in the irrigation canal. (*Id*. ¶ 68.) Plaintiffs argue that DOI's biological opinion (BiOp) of the UCF did not adequately assess the impacts of the dewatering by West Side Ditch users.

Plaintiffs previously sued Defendants three years ago in May of 2022. *Save the Bull Trout et al. v. U.S. Department of the Interior et al.*, Case 6:22-cv-00042-BMM. Plaintiffs' earlier lawsuit alleged that Defendants West Side unlawfully were "taking" the threatened bull trout. (Doc. 6 at 6.) FWS completed a BiOp following Plaintiffs' filing of their previous lawsuit. (*Id*.) Fish and Wildlife Services ("FWS")

issued an incidental take statement (ITS) to DOI. (*Id.*) The ITS required DOI to comply with numerous reasonable and prudent measures and terms and conditions. (*Id.*) Plaintiffs now contend that Defendants have failed to comply with the conditions of the ITS. Plaintiffs' main allegations against Defendants revolve around the alleged failure to follow required terms outlined by FWS.

Plaintiffs sent Defendants a proposed case management plan on November 17, 2025, that includes a timeline for discovery in this case. (Doc. 45 at 3.) Plaintiffs informed Defendants of their intent to seek discovery regarding their ESA claims, including taking depositions of West Side users and Grant Kohrs Ranch employees. (*Id.*) Defendants informed Plaintiffs that they opposed discovery in this case. (*Id.*) Defendants argue that the evidence for Plaintiffs' ESA claims should remain limited to the administrative record. (Docs. 56 and 58.)

The parties participated in a settlement conference with Magistrate Judge Johnston on February 10, 2026, and February 25, 2025. (Docs. 65 and 68.) The parties initially agreed to stay the case pending the design phase of a fish screen. (Docs. 70 and 71.) The parties failed to agree on reasonable terms regarding the stay

of proceedings. (*Id.*) The Court now addresses Plaintiffs' motion to commence discovery due to the parties' failure to reach agreement on a stay.

## LEGAL STANDARD

The Administrative Procedure Act ("APA"), 5 U.S.C. § 706, governs the review of an agency's actions for ESA claims. *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 692 (9th Cir, 2014). The APA generally constrains a court's review of ESA cases to the administrative record. *See e.g. Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F. 3d 1006, 1017 (9th Cir. 2012) (en banc).

A plaintiff may seek supplementation of an administrative record under one of the following exceptions: "(1) when necessary to determine whether the agency considered all relevant factors and explained its decision, (2) when the agency has relied on documents not in the record; (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith." *Alliance for the Wild Rockies v. Kruger*, 950 F. Supp. 2d 1172, 1177 (D. Mont. 2013) (citing *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006) (citations omitted)).

Judicial review in an ESA case brought under the citizen-suit provision may not always be restricted to the administrative record. *See N. Plains Resource Council v. U.S. Army Corps of Eng'rs*, 454 F. Supp. 3d 985, 991 (D. Mont. 2020).

Numerous courts have determined that "[t]he ESA's citizen suit provision allows [a court] to consider evidence outside the administrative record in its review of [a plaintiffs'] ESA claim." *Id.* (citing 16 U.S.C. §1540(g); *Kraayenbrink,* 632 F.3d at 497).

## DISCUSSION

Plaintiffs contend that this action requires the Court to consider evidence outside the administrative record. (Doc. 45 at 7.) Plaintiffs argue that they need further discovery to succeed on their claims that Defendants' diversion at the West Side Ditch constitutes an unlawful "take" of bull trout in violation of ESA § 9. (*Id*.) Plaintiffs allege that they need additional information in Defendants' possession to understand how Defendants managed the diversions and diversionary structures following the agency's review. (*Id*.) Plaintiffs argue that this management information triggers a need for additional discovery and depositions. (*Id*.) A request for unlimited discovery of both DOI and West Side appears too broad. The Court finds a more limited extra-record discovery proves appropriate.

### I. Whether Plaintiffs may seek further discovery from DOI outside the administrative record.

The 2023 ITS outlines the reasonable prudent measures DOI agreed to implement. The ITS provides the terms and conditions that DOI has an obligation to implement and further requires DOI to provide an annual summary report on the implementation progress to the agency. (Doc. 17-1 at 93-97.) For example, the ITS

directs DOI to "install fish screens on infrastructure for which [DOI] has unilateral control; work with partners to screen shared infrastructure." (*Id*. at 95-97.) Plaintiffs' ESA claims relate to DOI's failure to act or implement the reasonable prudent measures contained in the ITS as alleged in Count I. (Doc. ¶¶ 50-66.) Count III of Plaintiffs' Complaint alleges that the BiOp fails to adequately consider the cumulative impacts of the West Side Ditch diversion practices and the conduct of other West Side Ditch users in violation of the APA. (*Id*. ¶¶ 73-75.) Count III alleges a § 7 violation of the ESA. (*Id*.)

Plaintiffs seek to discover additional information regarding Defendants' actions, including diversion practices, responses to flow levels, and the implementation of a fish screen on the West Side Ditch. Defendants' alleged failures in implementing certain reasonable and prudent measures since the issuance of the ITS remain highly relevant to Plaintiffs' ESA claims. The Court determines that some of this information may be found in the administrative record. DOI asserts that it recently provided Plaintiffs with (1) the administrative record of FWS to support the June 23, 2023, BiOp and ITS, and (2) the implementation record showing DOI's efforts to implement the reasonable and prudent measures contained in the ITS. (Doc. 56 at 2 (citing Doc. 54.))

Claims brought pursuant to the ESA's citizen provision allows a private party to enforce the substantive provisions of the ESA against both private and

governmental agencies. *Bennett v. Spear*, 520 U.S. 154, 173 (1997). Plaintiffs rely on *Kraayenbrink,* 632 F.3d at 496, to argue that citizen-suit ESA cases may involve materials outside the administrative record. *Kraayenbrink* concluded that district courts "may consider evidence outside the administrative record for the limited purposes of reviewing Plaintiffs' ESA claim." *Id*. Courts have cited *Kraayenbrick* to support consideration of evidence outside the administrative record in ESA claims brought under the citizen suit provision. *See Natural Res. Def. Council v. Zinke*, 347 F. Supp. 3d 465, 50-01 (E.D. Cal. 2018); *Indigenous Envtl. Network v. U.S. Dep't of State*, 2017 WL 9280323, at *4 (D. Mont. Dec. 12, 2017). For example, in *Indigenous Envtl. Network*, the Court considered extra-record expert statements. 2017 WL 9280323, at *4.

Other courts have taken a more limited view. For example, the court in *Alliance for the Wild Rockies v. Probert*, 412 F. Supp. 3d, 1188, 1196-97 (D. Mont. 2019), limited a plaintiff's ESA claim review to the information contained within the administrative record despite being brought under the citizen-suit provision. *Probert* recognized that a plaintiff may be able to supplement the administrative record if the plaintiff established one of the four enumerated exceptions to extra-record supplementation for ESA claims. *Id.* (citing *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)).

The court recently revisited its *Probert* decision in *Alliance for the Wild Rockies v. Johnson*, CV-25-136-M-DLC, Doc. 32 at 10-16 (D. Mont. Feb. 11, 2026). *Johnson* first determined that plaintiffs' fell under ESA's citizen suit provision. *Id*. at 11. *Johnson* concluded that its scope of review was not limited to the administrative record given that the weight of authority "lean[ed] heavily in favor of permitting *some* amount of extra-record evidence in ESA citizen-suit claims." *Id*. at 14 (emphasis added) (citations omitted). The court allowed the plaintiffs to commence discovery. *Id*. at 15. *Johnson* supported its conclusions permitting discovery after having reviewed the plaintiffs' complaint and finding that the plaintiffs' claims extended to projects beyond the biological opinion and incidental take statement. *Id*.

The Court declines to conclude that a party bringing a citizen-suit ESA claim always must seek extensive discovery outside the administrative record after reviewing the authority on this issue. A more logical view stands for the rationale that nothing in the ESA precludes a plaintiff bringing a claim under the citizen suit provision from seeking to examine extra-record information if necessary to prove its claims. The Court will address both Plaintiffs' claims against DOI, Count I and Count III, in turn, to determine if extra-record discovery proves warranted under the facts and circumstances.

**A. Count III: Agency's failure to adequately consider West Side cumulative impacts.**

Plaintiffs assert that Count III was brought under the citizen provision of the ESA allowing discovery outside of the administrative record. (Doc. 45 at 4.) Plaintiffs' Count III revolves around the agency's alleged failure to consider pertinent information in drafting the BiOp. (Doc. 1 ¶¶ 73-75.) Plaintiffs seek discovery, including deposition of DOI's employees. (Doc. 45 at 8.)

The Court's review of Count III of Plaintiffs' Complaint, alleging violations of the APA, must be confined to the administrative record with respect to DOI's actions. Plaintiffs' § 7 claim asserts failures by the agency to consider the cumulative impacts of West Side Ditch users' diversion practices in completing the BiOp. This claim falls squarely into the Court's review of the administrative record pursuant to the APA. *See Ctr. for Biological Diversity v. Ross*, 349 F. Supp. 3d 38, 41 (D.D.C. 2018).

Plaintiffs provided the Court with numerous cases that limit a court's review of challenges to a biological opinion under the ESA § 7 to the administrative record. (Doc. 59 at 6-7.) Plaintiffs concede that judicial review of a biological opinion, a final agency action, must be constrained to the agency record. (Doc. 59 at 5 (citing *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602 (9th Cir. 2014)). Plaintiffs' Count III asks the Court to do just that. Plaintiffs ask the Court to review the agency's final BiOp and decide whether the agency adequately considered the cumulative impacts of West Side Ditch diversions.

Plaintiffs allege that the BiOp's failure to address available information proves arbitrary and capricious and constitutes an abuse of discretion. (Doc. 1 ¶¶ 74-75.) The Court's review of what the agency considered when drafting the BiOp and ITS remains constrained to the administrative record. DOI provided these records to Plaintiffs. The Court declines to allow Plaintiffs to seek extra-record discovery from DOI on Count III.

The Court notes, however, that Plaintiffs' request for discovery related to West Side's conduct as relevant to Count III may fall within a supplementation exception to the administrative record limitation of the APA. West Side's actions would be relevant in "determining whether the agency considered all relevant facts explained in its decision," *Alliance for the Wild Rockies v. Kruger*, 950 F. Supp. 2d at 1177 (citing *Ctr. for Biological Diversity*, 450 F.3d at 943 (citations omitted)). To understand whether the agency adequately considered the cumulative impacts of West Side Ditch user diversions in the BiOp requires the Court to review both the information available to the agency and the information that the agency allegedly failed to consider about West Side's actions. Plaintiff may supplement the administrative record on Count III with information regarding West Side's conduct that was allegedly omitted or undervalued in the BiOp.

### B. Count I: DOI's failure to act/implement the reasonable and prudent measures set out in the ITS.

A more difficult question remains whether the Court's scope of review should be limited to the administrative record for Plaintiffs' § 9 ESA claims against DOI based on DOI's alleged failure to implement the reasonable prudent measures outlined in the ITS. DOI has provided Plaintiffs with the annual implementation records that outline DOI's efforts to implement the reasonable prudent measures contained in the ITS. DOI contends that it has "every incentive to include any and all materials reflecting implementation efforts." (Doc. 56 at 10-11.) The majority of the information necessary for Plaintiffs to explore their ESA § 9 claims against DOI for the alleged failure to act and implement the ITS reasonable prudent measures should be contained within the administrative record.

On the other hand, Plaintiffs argued at the hearing that the administrative record provided by DOI does not contain all the information needed. For example, Plaintiffs contend that the administrative record references emails about meetings held on the implementation efforts. Plaintiffs note, however, that the administrative record does not contain any meeting notes or information what was discussed at some of these meetings or what the meetings entailed. Plaintiffs ask the Court to allow a Fed R. Civ. P. 30(b)(6) deposition of the Grant Kohrs Ranch staff member primarily responsible for the implementation of the reasonable prudent measures by DOI. The Court finds Plaintiffs' request for a limited deposition of a Grant

Kohrs Ranch staff member reasonable extra-record information necessary for Plaintiffs to prove its § 9 ESA claims against DOI, specifically for Count I.

### II. Whether Plaintiffs may seek additional discovery of West Side outside the administrative record.

Plaintiffs also ask for discovery outside the administrative record regarding its claims against West Side. Plaintiffs emphasize that the administrative record in this case does not include the conduct of West Side Ditch users, a private party privy to this action. (Doc. 45 at 7.) Plaintiffs ask to depose West Side Ditch users. (*Id*. at 3.)

The Court agrees that the administrative record would not contain the full extent and information of the West Side Ditch user's involvement. West Side has not offered authority to indicate that discovery should not be available for an ESA § 9 claim against a private party. The Court finds that the discovery limitations, constraining a court's review to the administrative record, does not apply against third parties to the agency review. Courts have allowed discovery against non-governmental parties to ESA § 9 claims. *See e.g. ASPCA v. Feld Entm't, Inc.*, 677 F. Supp. 2d 55, 61 (D.D.C. 2009).

The administrative record appears limited only to DOI's knowledge and interpretation regarding the steps taken after the issuance of the BiOp and ITS. The administrative record "consists of all documents and materials directly or indirectly considered by agency decision-makers" but not the materials considered by the

private ditch users in declining to install fish screens. *Blue Mts. Biodiversity Project v. Jeffries*, 99 F.4th 438, 444 (9th Cir. 2024). Plaintiffs need to understand the actions and personal knowledge of the West Side Ditch users. West Side's diversion practices and conduct regarding the installment of the fish screens likely would differ from DOI's conduct.

Plaintiffs have shown that internal documents and communications between the private West Side Ditch users may prove relevant to Plaintiffs' ESA claims, particularly against West Side. These internal materials are not included in the administrative record and must be produced through discovery. Plaintiffs also may conduct a limited 30(b)(6) deposition on a West Side Ditch representative to gather evidence regarding their ESA claims against West Side.

**CONCLUSION**

Plaintiffs may not conduct further extensive discovery on DOI outside the administrative record. The administrative records recently provided to Plaintiffs by DOI should contain relevant information on DOI's alleged failure to act or implement the reasonable prudent measures of the ITS. Plaintiffs have shown that the administrative record may lack the necessary information it needs to pursue all of its claims. The Court will allow Plaintiffs to conduct a limited Rule 30(b)(6) deposition on the Grant Kohrs Ranch employee who has knowledge of DOI's implementation efforts.

Plaintiffs may conduct limited discovery on West Side, including a limited Rule 30(b)(6) deposition of a West Side Ditch representative. West Side must respond to Plaintiffs' discovery requests regarding communication among West Side Ditch users regarding West Side's diversion practices and conduct regarding the installation of the fish screens.

**ORDER**

Accordingly, **IT IS ORDERED** that Plaintiffs' Save the Bull Trout and Alliance of the Wild Rockies Motion to Commence Discovery (Doc. 44) is **DENIED**, in part, and **GRANTED**, in part.

1. Plaintiffs may not conduct unlimited discovery on DOI.
2. Plaintiffs may conduct a limited 30(b)(6) deposition of the Grant Kohrs Ranch staff member primarily involved in DOI's implementation of the reasonable prudent measures of the ITS.
3. Plaintiffs may commence limited discovery on West Side regarding West Side's diversion practices and conduct regarding the installation of the fish screens, including a Rule 30(b)(6) deposition of a West Side Ditch representative.

DATED this 6th day of April 2026.

Brian Morris, Chief District Judge
United States District Court