Timothy M. Bechtold
**BECHTOLD LAW FIRM, PLLC**
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net

Alizabeth A. Bronsdon
**BRONSDON LAW FIRM, PLLC**
P.O. Box 7262
Missoula, MT 59807
(267) 664-3422
bronsdonlaw@gmail.com

Elizabeth M. Forster
**FORSTER LAW, PLLC**
P.O. Box 116
Columbus, MT 59019
(406) 318-5354
liz@forster-law.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**HELENA DIVISION**

| | |
|---|---|
| SAVE THE BULL TROUT and ALLIANCE FOR THE WILD ROCKIES,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. DEPARTMENT OF THE INTERIOR, and WEST SIDE DITCH COMPANY,<br><br>Defendants. | CV-25-45-H-BMM<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICES OF SUPPLEMENTAL AUTHORITY** |

Defendant West Side Ditch Company's ("WSDC") Notice of Supplemental Authority and Suggestion of Mootness, (Doc. 126), and Federal Defendant Department of Interior's ("DOI") Notice Regarding the Harm Recission Rule and

Suggestion of Mootness, (Doc. 127), are procedurally improper, and should therefore be stricken. Should the Court decide to consider them, the substantive arguments made in both notices lack merit, for the reasons discussed below.

Local Rule 7.4 allows a party to advise the Court of legal authority only when that authority is "pertinent and significant" and "comes to a party's notice after the briefs have been filed but before decision[.]" Here, Defendants' cited authorities are neither "pertinent" nor "significant," nor does either present authority that alters the legal landscape in this case or is even legally-binding on this Court. Neither WSDC's cited case, which was decided on October 8, 2026, nor Federal Defendants' September 14, 2026 rule recission were unavailable when Defendants filed their respective summary judgment reply/response briefs. *See* Doc. 118 (dated Oct. 13, 2026) and Doc. 111 (dated Sept. 30, 2026). Moreover, Federal Defendants' Notice exceeds two pages and presents an entirely new legal argument (standing), in violation of Local Rule 7.4.

# I. ARGUMENT

## A. DOI's Notice is overlength and presents an entirely new legal argument, in violation of Local Rule 7.4.

Local Rule 7.4 requires that any notice of supplemental authority not exceed two pages or present a new argument. DOI's notice flouts both requirements: its notice is six pages, and it presents an entirely new argument not contained in its

summary judgment briefing—that Plaintiffs apparently lack standing and the case is moot. Doc. 127 at 3–6. DOI's disregard for the limits of the local rules is reason enough for the Court to strike its Notice.

**B. DOI's Notice does not present authority that came to its notice after its summary judgment response brief was filed.**

Local Rule 7.4 only allows a notice of supplemental authority when the authority "comes to a party's notice after the briefs have been filed but before the decision." DOI's Notice cites no "new" legal authority that would properly come before the Court under Local Rule 7.4. Rather, DOI raises an entirely new, substantive legal argument—standing—based on its own regulatory change that was announced in draft form in April 2025, published two months before the Court's summary judgment deadline, and went into effect a week before the Court's summary judgment deadline and two weeks before DOI filed its Response to Plaintiffs' motion for summary judgment. Rescinding the Definition of "Harm" Under the Endangered Species Act, 90 Fed. Reg. 16102 (Apr. 17, 2025) ("Draft Rule"); 91 Fed. Reg. 43300 (July 14, 2026) ("Final Rule").

Indeed, the Final Rule and its implications—or lack thereof—to this case were discussed at length by Plaintiffs and WSDC in their summary judgment briefs and during argument on Plaintiffs' second preliminary injunction. Doc. 89 at 27–29; Doc. 104 at 24–25; Doc. 109 at 23–24; Doc. 113 at 30–32; Doc. 118 at 14–15; Doc. 120 at 2–3. DOI simply decided not to engage in that discussion. *See* Doc. 88, 111.

Thus, DOI's Notice introduces no new authority and should be stricken as improper "new argument" under Local Rule 7.4.

Notably, DOI made the strategic decision not to file a cross motion for summary judgment or to include this new argument about the recission's standing implications in its Response to Plaintiffs' Motion for Summary Judgment. It now seeks to file an overlength, substantive brief in lieu of a proper summary judgment argument. This last-ditch, eleventh-hour brief shirks the Federal Rules of Civil Procedure, the Local Rules, and this Court's authority to manage its docket. At this point in the litigation, it serves only to confuse the Court and prejudice Plaintiffs, especially since it was filed less than 48 hours before oral argument on the pending summary judgment motions.

DOI has also not filed a motion for leave to file a supplemental brief or a motion to dismiss for lack of subject-matter jurisdiction, both of which would at least ensure the Court has a clear record on the specific issue raised by DOI's Notice and properly protect Plaintiffs' due process right to file a comprehensive response. DOI's late attempt to sow confusion with arguments it declined to raise in earlier briefing, or via a specific motion, based on information that is already before the Court is improper. Thus, DOI should not be permitted a second bite at the apple, and its eleventh-hour legal brief must be stricken.

**C. DOI's "suggestion of mootness" is wrong on the merits.**

Should the Court elect to consider the arguments in DOI's improper Notice anyway, the recission of the regulatory definition of "harm" does not "materially affect whether the relief Plaintiffs seek concerning the 2023 ITS would redress their alleged injuries." *Contra* Doc. 127 at 2. Rather, redressability is not implicated in any way by the regulation's recission because Plaintiff does not rely on the rescinded regulatory definition for its take allegations; nor would FWS be required to apply an illegal interpretation of the ESA should this Court rule in Plaintiffs' favor and remand the biological opinion back to the agency for further analysis.

First, DOI's argument depends entirely on a blatant misrepresentation of Plaintiffs' legal claims and arguments, which Plaintiffs have clarified again and again in briefing and during previous oral arguments in this case. Plaintiffs' claims plainly do not rely exclusively on the rescinded regulatory definition of "harm." Rather, Plaintiffs maintain that a statutory interpretation of the ESA supports finding that habitat modification is "harm." *See* Doc. 109 at 23–24; Doc. 120 at 2–3. Crucially, Plaintiffs also allege that Defendants are taking bull trout directly, by killing and injuring them, Doc. 101 at 14, which has no connection to the habitat modification implicated by the statute's use of the term "harm" to define "take." *See* 16 U.S.C. §1532(19). Thus, DOI's mootness arguments are misguided and a poor

attempt to confuse and conflate the issues and distract the Court immediately before oral argument on Plaintiffs' motion for summary judgment.

As Plaintiffs' summary judgment briefing explains, the Supreme Court has already done the required textual statutory analysis and determined that the plain language of the ESA, its legislative history, and common sense all support that "harm" under the statute includes habitat modification that actually kills or injures listed species. *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 695 (1995) ("Our consideration of the text and structure of the Act, its legislative history, and the significance of the 1982 amendment persuades us that the Court of Appeals' judgment should be reversed."); *see also* Doc. 120 at 3 (discussing *Sweet Home)*. Despite also finding the regulatory definition of harm was reasonable under the no longer applied *Chevron* deference, the majority's opinion in *Sweet Home* conducted the statutory interpretation that *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412–13 (2024), has directed courts to conduct. Doc. 120 at 2–3.

The Trump Administration's latest interpretation, which mirrors the *Sweet Home* dissent, does not control, nor does it receive deference under *Loper Bright*. *Id*. Under *Loper Bright*, agencies receive no deference on matters of statutory interpretation, even in matter raising "technical statutory questions." 603 U.S. at 402. Rather, this Court should follow the cogent analysis and sound logic of the

*Sweet Home* majority, which directly interprets the statute under well-established principles of statutory interpretation to find that "harm" includes habitat modification because to interpret it otherwise is, quite frankly, absurd. *See, e.g.*, *Sweet Home*, 515 U.S. at 700–01 ("No one could seriously request an 'incidental' take permit to avert § 9 liability for direct, deliberate action against a member of an endangered or threatened species, but respondents would read 'harm' so narrowly that the permit procedure would have little more than that absurd purpose.").

Contrary to DOI's argument in the Notice, Doc. 127 at 5, mootness is not implicated on these facts because FWS does not currently have *any* regulatory definition of "harm" to replace the rescinded definition on remand. Doc. 120 at 3 n.1 (citing 91 Fed. Reg. at 43301). DOI cites no binding authority that establishes take affirmatively *does not* include habitat modification. *Id*. In other words, there are no "newly effective regulations" for FWS to apply instead. *Contra* Doc. 127 at 5. Likewise, there is no "suggestion of mootness" based on redressability concerns here because FWS's recission of the former rule without replacement means that, on remand, FWS would be bound by this Court's interpretation of the statute in this case, not the agency's own strained interpretation that underlined its decision to rescind the former rule. Final Rule, 91 Fed. Reg. at 43302 (finding "no replacement definition is needed"); *contra* Doc. 127 at 4 (incorrectly arguing that FWS would have to apply the "Harm Rescission Rule" on remand). If FWS chose to rely on a

legally-flawed interpretation of the ESA, that issue could (and would) be remedied in subsequent litigation challenging the new biological opinion.

Finally, DOI is not just wrong on the law; it is also wrong on the facts. Plaintiffs seek remand for FWS to conduct a cumulative effects analysis that properly accounts for all West Side Ditch water users. Doc. 101 at 26–30. Plaintiffs do not seek vacatur of the ITS because Plaintiffs agree that vacatur would remove the current protections the ITS provides while that analysis is conducted. Rather, "Plaintiffs ask the Court to maintain the current protective standards of the ITS while remanding the BiOp to the agencies until such time as the agencies demonstrate to this Court that they have adequately complied with the law [and] order Defendants to stop diverting from the UCF when flows are below 110 cfs to ensure a buffer above the minimum 90 cfs[.]" Doc. 101 at 31.

Therefore, this Court can, and should, grant Plaintiffs the relief they seek in this case. DOI's mootness argument substantively lacks merit and is a procedurally improper attempt to confuse the Court hours before oral argument, as well as to take a second bite of the apple on addressing a well-known regulatory change that has no direct application to the legal issues before the Court. The Court should not allow DOI's attempt to distract from its culpability in the take of bull trout or its continued refusal to accept its responsibility under the ESA to protect listed species. *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 183–84 (1978) (quoting 119 Cong. Rec. 42913

(1973)) (Congress passed the ESA so "the agencies of the Government can no longer plead that they can do nothing about it. *They can, and they must. The law is clear*.") (emphasis in original).

**D. WSDC's "suggestion of mootness" is also improper and wrong on the merits.**

WSDC's similar last-ditch attempt to confuse the Court on the materiality of the regulatory recission of "harm" should be stricken as well, and for similar reasons. First, contrary to WSDC's representation in its Notice, the case WSDC relies on for its "suggestion of mootness" was decided on October 8, 2026, which means that it was available when WSDC filed its reply on October 13, 2026. *See* Doc. 118 at 1; contra Doc. 126 at 2. Second, the case is an unpublished, per curium opinion from the Eleventh Circuit, *Bear Warriors United, Inc. v. Sec'y, Fla. Dep't of Env't Prot.*, Nos. 25-11612, 25-11821, 2026 U.S. App. LEXIS 30844 (11th Cir. Oct. 8, 2026) (per curium) (unpublished), and as such, is non-precedential. *Mast, Foos & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 488 (1900); *see also* 11th Cir. R. 36-2.

Third, *Bear Warriors* and its holding is neither pertinent nor significant to Plaintiffs' legal claims and the arguments before the Court in this case, as required by Local Rule 7.4. Like DOI, WSDC misrepresents to the Court that "Plaintiffs are requesting future relief under a rescinded rule." *Contra* Doc. 126 at 3. For reasons discussed above and at length in Plaintiffs' briefs, neither *Bear Warrior* nor the recission of the regulatory "harm" definition support WSDC's argument that

"Plaintiffs can no longer rely on habitat degradation as a basis for Section 9 take liability." *Contra* Doc. 126 at 2. At the risk of sounding like a broken record that somehow only Defendants cannot hear, Plaintiffs argue that, under the Supreme Court's precedent in *Loper Bright*, the majority's textual analysis in *Sweet Home* provides an independent, legal interpretation that finds, under the ESA, "harm" logically includes habitat modification that actually kills or injures listed species. Doc. 120 at 2–4. Contrary to WSDC's representation on rebuttal during the summary judgment hearing, *Sweet Home* did conclude that "harm" under the ESA necessarily includes this kind of indirect actions. *Sweet Home*, 515 U.S. at 697–98 ("Respondents argue that the Secretary should have limited the purview of 'harm' to direct applications of force against protected species, but the dictionary definition does not include the word 'directly' or suggest in any way that only direct or willful action that leads to injury constitutes 'harm.' Moreover, unless the statutory term 'harm' encompasses indirect as well as direct injuries, the word has no meaning that does not duplicate the meaning of other words that § 3 uses to define 'take.'").

Nothing in *Bear Warriors* changes that legal landscape. The Eleventh Circuit vacated the district court's judgment and injunction in *Bear Warriors* because that district court had relied solely on the regulatory definition of harm to find a likelihood of take under the ESA. The Eleventh Circuit's analysis is as follows:

> At the time of the district court's judgment, the applicable U.S. Fish and Wildlife Service regulations further defined "take" with a

> definition of "harm," defining "harm" as "an act which actually kills or injures wildlife. Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R. § 17.3 (prior to 2026 amendment) (emphasis added). **In concluding that FDEP violated the Endangered Species Act, the district court relied on this definition of "harm."**
>
> While this appeal was pending, however, the U.S. Fish and Wildlife Service promulgated a new final rule rescinding the definition of harm on which the district court relied. *See* Rescinding the Definition of "Harm" Under the Endangered Species Act, 91 Fed. Reg. 43,300 (July 14, 2026) (to be codified at 50 C.F.R. pts. 17, 222). Accordingly, we vacate the judgment and injunction, and remand for the district court to evaluate what effect the new rule has on this case.

*Bear Warriors*, 2026 U.S. App. LEXIS 30844, at *5 (emphasis added).

The facts of *Bear Warrior* are not analogous here. First, Plaintiffs *are* in the district court, not the appellate court. This Court has not yet ruled on Plaintiffs' claims, including whether Defendants are taking bull trout in violation of the ESA. Second, this Court is well aware that the regulatory definition does not apply to take alleged after September 14, 2026, and no party claims that it does. *See* Doc. 120 at 2. Therefore, there is no "change in the applicable legal framework" for this Court to consider. *Contra* Doc. 126 at 3 (citing *New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 590 U.S. 336, 337–39 (2020) (per curiam)). The Eleventh Circuit also made clear that, in *Bear Warriors*, "both parties agreed that it would be necessary for [the circuit court] to remand the case in the event of a new rule." *Id.* at *5 n.2. Plaintiffs here do not agree that the rescission of the prior

definition of "harm" alters the procedural posture of this case, nor did Defendants elect to raise the issue until after summary judgment briefing had concluded.

Moreover, *Bear Warriors* does not change the fact that WSDC often draws half of the entire flow of the Upper Clark Fork River during mid- to late-summer when bull trout need flows the most to ensure adequate food production, the ability to migrate, cold water, and the other habitat features necessary for the threatened fish to survive. Doc. 101 at 11–14; Doc. 120 at 7–10. It does not change the fact that WSDC's dam blocks bull trout migration during low flows, which inhibits an essential life behavior that ensures they can survive. Doc. 101 at 17–18; Doc. 120 at 10–12. Nor does *Bear Warriors* change the fact that WSDC's 100-year-old headgate lacks a fish screen and consequently entrains, injures, and/or kills fish. Doc. 101 at 14–17; Doc. 120 at 10–12.

These harms to an ESA-listed fish, which are not genuinely disputed (*see* Doc. 120 at 5–12), far outweigh the supposed crop failures that at the summary judgment hearing WSDC's attorney claimed occurred, without any supporting evidence in the record, after this Court issued its preliminary injunction last fall. WSDC's users have access to a $20 million lifeboat with the Montana Natural Resource Damages Program's instream flow easements, which would pay WSDC users directly—every year—for the market value of their crops in exchange for closing the headgate and allowing water to remain in the Upper Clark Fork for the benefit of bull trout and

the larger aquatic ecosystem. *See* Doc. 112 ¶123; *see also Tenn. Valley Auth.*, 437 U.S. at 194 ("Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities, thereby adopting a policy which it described as 'institutionalized caution.'"); *Sierra Club v. Marsh*, 816 F.2d 1376, 1386 (9th Cir. 1987) (the "benefit of the doubt" must go to ESA-listed species). The bull trout have no such lifeboat.

Therefore, *Bear Warriors* is not "significant authority" that this Court need consider, nor is it "pertinent" authority because it is neither procedurally nor factually similar to this case. This Court has already been presented with the legal arguments that the parties in *Bear Warriors* will likely raise on remand to the district court. That this Court has the opportunity to evaluate these arguments first does not moot the controversy. Rather than mooting Plaintiffs' claims here, *Bear Warriors* reinforces why Plaintiffs' case and its legal controversy are live and this Court is in the best position to interpret the statute because legal interpretation "has been, 'emphatically,' 'the province and duty of the judicial department' for at least 221 years." *Loper Bright*, 603 U.S. at 412.

Thus, even if the Court decides to consider *Bear Warriors* as "supplemental authority" that was unavailable to WSDC before its briefing deadline, it must reject

WSDC's argument that the "decision directly concerns" the legal landscape of this case. *Contra* Doc. 126 at 3.

## II. CONCLUSION

Defendants' respective notices are procedurally improper under Local Rule 7.4 and should therefore be stricken. Should the Court decide to consider them, the substantive arguments made in both notices lack merit.

DATED this 18th day of November, 2026.

/s/ Timothy M. Bechtold
Bechtold Law Firm, PLLC

/s/ Alizabeth A. Bronsdon
Bronsdon Law Firm, PLLC

/s/ Elizabeth M. Forster
Forster Law, PLLC

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief is in 14-point font and has 3,161 words, exclusive of any captions, tables, certificates, and signature blocks.

DATED this 18th day of November, 2026.

/s/ Elizabeth M. Forster
Forster Law, PLLC